**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

STEVEN MITCHELL,

Plaintiff,

v.

BANNER LIFE INSURANCE COMPANY & ABC COMPANY, a fictitious company,

Defendants.

Civil Action No.: 08-5984 (JLL)

**OPINION**

**LINARES**, District Judge.

This matter comes before the Court by way of two motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), by Plaintiff Steven Mitchell ("Steven" or "Plaintiff") and Defendant Banner Life Insurance Company ("Banner"), respectively. The Court has considered the written submissions and also the arguments made by the parties at oral argument. For the reasons that follow, summary judgment is granted in favor of Defendant as to the invalidity of the life insurance policy at issue. Summary judgment, however, is denied as to Defendant's New Jersey Insurance Fraud Prevention Act claim.

## I. BACKGROUND

Banner Life Insurance Company ("Banner" or "Defendant") issued a life insurance policy numbered 17B344627 in the name of James Gray on October 9, 2001 in the amount of $500,000 ("Policy"). The applicant provided a social security number, driver's license, date of birth,

occupation, and amount of insurance in force. In addition, the applicant provided answers to questions about his health history. Banner also required the applicant to undergo a physical examination and certain medical tests. (Pl. Mot. for Summ. J, Ex. C). As part of the underwriting process, Banner obtained a Medical Information Bureau Report and a Motor Vehicle Report. (Def. Mot. for Summ. J., Ex. 9, ¶¶ 8-9). The applicant only provided one name, one social security number, and one date of birth. The application stated that the primary beneficiary was Steven Mitchell, the son of the proposed insured.[1] In addition, Banner received payment for all premiums.

In fact, the person claiming to be applicant James Gray had an additional different social security number and driver's license under the name of Tom Mitchell, and also used multiple dates of birth in connection therewith. This information was not provided to Banner during the application process. Subsequent to obtaining the life insurance policy from Banner, the deceased used the name Tom Mitchell for travel and all medical care and hospitalizations until his final days when, accompanied by plaintiff, decedent's last hospital admission was in the name of "James Gray." (Def. Response to Pl. Material Facts, 3-4). Specifically, medical records indicate that prior to his last hospital admission, the deceased used the name Tom Mitchell and an accompanying social security number for approximately ten hospital visits from 2005 through 2007. Id. at 4-5. However, as previously indicated, on October 28, 2007, in his final hospital visit for terminal pancreatic cancer, the deceased used the name James Gray and listed the social security number used on the Banner life insurance application. On November 11, 2007, the State

[1] On October 9, 2007, a Change of Beneficiary form was filed indicating that the beneficiary, Steven Mitchell, was the insured's nephew. (Pl. Mot. for Summ. J., Exs. F). Plaintiff Steven Mitchell now claims that the insured was his father, but the relation between Plaintiff and the applicant remains uncertain. See e.g. (Tr. 28, 7-19).

of New Jersey issued a death certificate for James Gray. (Pl. Mot. for Summ. J., Ex. N).

Claim for Benefits and Banner Investigation

Plaintiff Steven Mitchell submitted to Banner a "Proof of Death Claimant's Statement" dated April 17, 2008. (Def. Mot. for Summ. J., Affidavit Of Sharon Jenkins, Ex. E). Thereafter, Banner retained an outside investigator to conduct an investigation. The investigator interviewed Plaintiff Steven Mitchell on May 14, 2008, during which Plaintiff executed a written statement in the presence of his legal counsel. (Def. Mot. for Summ. J., Ex. 9, ¶¶41, 47). As a result, Banner declined to pay Plaintiff proceeds on the policy. It is Defendant's position that if the application by James Gray had disclosed accurate and honest information, Banner would have declined to issue the policy. (Def. Response to Pl. Material Facts, 53). Specifically, Defendant points to the following alleged misrepresentations made in the application: (1) name and identity; (2) date of birth; (3) social security number; (4) income; (5) relationship to the named beneficiary; (6) amount of insurance in force; (7) occupation/employment; and (8) medical history. (Def. Opp'n to Pl. Mot. for Summ. J., 11-12).

Notably, Plaintiff states that the insured was born in New Jersey, but did not know when or where and could not locate a birth certificate. (Def. Response to Pl. Material Facts, 57). Plaintiff stated that the names of his parents on his birth certificate were "Tom Mitchell" and "Jean Mitchell," but produced a birth certificate which did not contain the names of his parents.[2] (Def. Response to Pl. Material Facts, 57). Plaintiff further stated that James Gray "had no real

[2]The Court notes, however, that this misstatement occurred during a deposition and Plaintiff argues that it was not intentional, but rather the Plaintiff did not remember. (Tr. 42-43).

property, had no bank accounts to [Plaintiff's] knowledge, his will was not probated, and there were no estate filings." (Def. Response to Pl. Material Facts, 57). The Court notes, however, that the document advanced by Plaintiff entitled "Last Will and Testament" was made in the name of James Gray a/k/a Tom Mitchell. (Pl. Mot. for Summ. J, Ex. Q). Despite the fact that the applicant represented that he had total assets of $1,700,000 and earned $90,000 annually, Defendant's investigation also revealed that James Gray in fact "never filed income tax returns, owned no personal assets or real property, and did not maintain any bank accounts," and neither was a "will probated nor intestacy proceedings commenced." (Def. Response to Pl. Material Facts, 58-59).

Additionally, Banner's investigation and audit revealed that the application for life insurance contained several misrepresentations with regard to his lifestyle, medical history, and family history. Specifically, despite the representation that the applicant was a non-smoker and did not drink alcohol, Banner's investigation and audit revealed that Tom Mitchell "had a history of tobacco use in the form of 3-5 cigars per day from at least 1986 until about August, 2007" and used alcohol. (Def. Response to Pl. Material Facts, 60). Further, the application provided that James Gray "had neither visited any hospital or medical provider nor been diagnosed with any medical condition in the previous ten years," but Banner's investigation revealed that Tom Mitchell had a history of the following: "hypertension, high cholesterol, cardiac disease, coronary artery disease, high blood pressure, surgery, [coronary artery disease], [a coronary stent as used in a percutaneous coronary intervention], hyperlipdermia, prior multiple percutaneous coronary interventions, hyperglycemia, prostate problems, cardio catherization with stent placement, [and] chronic coronary disease." (Def. Response to Pl. Material Facts, 61). In addition, information on

the Banner application contradicted family history provided to other insurance companies.

Plaintiff's Former Insurance Fraud

Defendant points to previous attempts by Plaintiff Steven Mitchell to perpetrate a fraudulent scheme against an insurance company: "In 2004, plaintiff pled guilty to mail fraud and false use of a social security card in the United States District Court for the Eastern District of Pennsylvania in connection with two such schemes perpetrated against All American Life Insurance Company [] and Valley Forge Life Insurance Company []." (Def's Mot. for Summ. J., 1). There, Plaintiff took out a life insurance policy in the name "Tom Mitchell" and convinced the newly-widowed wife of a man named Lowell Mitchell to assist him in obtaining false death certificates and submitting claims to both insurance companies, asserting that Tom was Lowell's nick name and that Plaintiff was his father. Id. Plaintiff Steven Mitchell entered a guilty plea in the United States District Court for the Eastern District Pennsylvania to offenses arising out of "a plan where Steven Mitchell attempted to collect life insurance premiums for the death of his father, who had not died." (Pl. Opp'n to Def's Mot. for Summ. J., 4). With regard to civil claims, Plaintiff ultimately agreed to settle and rescind both policies. (Def's Mot. for Summ. J., 1).

Procedural History and Present Motions

On October 27, 2008, Plaintiff brought suit against Banner, making a claim for benefits under the policy. Plaintiff originally filed a Complaint in the Superior Court of New Jersey, Law Division Union County. Defendant Banner removed the action to this Court on the basis of

diversity jurisdiction. Banner also asserts a counterclaim for intentional and knowing violations of the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1, et seq., rescission of the Policy, and a declaration voiding the Policy issued in the name of James Gray.

The parties do not genuinely dispute the facts detailed above, except insofar as Plaintiff argues that Tom Mitchell was known by both names and Defendant argues that the name James Gray was that of a fictitious person used to perpetrate a fraud. Plaintiff argues that the deceased used both names for many years and points to a Baptismal Certificate indicating as such and the statements of Tom Mitchell's companion, Ruth Nack. (Pl. Mot. for Summ. J, Ex. 20). Further, Plaintiff argues that the prior acts of a life insurance policy beneficiary are not permissible grounds for rescinding a policy when the insured paid all premiums and the period of contestability lapsed.[3]

Defendant states that the omissions on the Banner life insurance application were made for the following reasons:

> (i) in order to obtain additional insurance from Banner Life which could not be obtained in the name of 'Tom Mitchell' because 'Tom Mitchell' was purportedly deceased; (ii) to avoid Banner Life's discovery that 'Tom Mitchell' not only already had two policies of life insurance, but that proceeds of same had already been requested/obtained; (iii) to avoid detection by the other two life insurance companies as well as by law enforcement agencies of the fraudulent scheme perpetrated on those insurance companies; and (iv) to cover-up the health history, ongoing health issues, and other material misrepresentations of 'James Gray'/'Tom Mitchell' made to Banner Life.

(Def. Response to Pl. Material Facts, 3). Accordingly, Defendant argues that the Banner policy should be voided for the following reasons: (1) "insurance policies issued in fictitious names,

[3]Banner does not contest that all premiums have been paid. However, at least some of the premiums were not paid by James Gray/Tom Mitchell. (Def. Response to Pl. Material Facts, 74).

illegally obtained identities, and/or to imposters are void ab initio"; (2) Plaintiff's claim for death benefits is barred by the doctrine of judicial estoppel because of Plaintiff's former representations in Pennsylvania state court; (3) Plaintiff cannot establish that an insurable interest in the named-insured existed when the policy was issued; and (4) material fraudulent misrepresentations with regard to both the insurance application as well as the instant claim for death benefits. (Def's Mot. for Summ. J., 2-3).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), a court grants summary judgment to a moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must first demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must construe facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-9 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Id. at 248. "The issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 248-49 (citation omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." Norfolk

Southern Ry. Co. v. Basell USA Inc., 512 F.3d 86, 91 (3d Cir. 2008).

## III. DISCUSSION

In the matter presently before the Court, there is no genuine dispute that the deceased policyholder used two identities, Tom Mitchell and James Gray. As discussed above, the deceased obtained driver's licenses in both names and, as argued by the Plaintiff, the picture on each appears to be the same person. The parties do not dispute that Banner issued a policy in the name of James Gray and that the application for the policy contained no mention of Tom Mitchell, or that the policyholder had an additional social security number and driver's license in that name. Nor do the parties dispute that on his application the policyholder answered that he did not use alcohol or tobacco, when in fact he did. The crux of the motions at bar, however, is whether withholding the aforesaid information pertaining to Mr. Gray's alternate identity and the misrepresentations about his lifestyle is a sufficient basis to declare the Banner policy void as a matter of law. (Tr. 32, 8-21; 44).

The Banner policy contained the following incontestability clause: "We will not contest this policy after it has been in force during the insured's lifetime for two years from the issue [d]ate, except for failure to pay premiums." (Pl. Mot. for Summ. J., Ex. F, 6)

### 1. N.J Stat. Ann. § 17B:25-4

New Jersey requires by statute that all life insurance policies contain an incontestability clause as follows:

There shall be a provision that the policy (exclusive of provisions of the policy or

> any contract supplemental thereto relating to disability benefits or to additional benefits in event of death by accident or accidental means or in event of dismemberment or loss of sight) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue.

N.J.S.A. 17B:25-4.

Incontestability clauses are mandated as a matter of public policy. As stated by the Supreme Court of New Jersey, "[a]fter a stated period, an incontestability clause grants an insured repose from the rescission of the policy because of misstatements in the application." Paul Revere Life Ins. Co. v. Haas, 137 N.J. 190, 197 (1994) ("Their purpose is to give the insured a sense of security after the stated period elapses." (quoting Strawbridge v. New York Life Ins. Co., 504 F.Supp. 924, 829 (D.N.J. 1980)). "Through limiting the time period in which insurance companies could contest life insurance contracts, the Legislature balanced the interests of the insurer in rescinding a fraudulently-obtained policy with those of the insured in security of coverage." Mass. Mutual Life Ins. Co. v. Manzo, 122 N.J. 104, 112 (1990). Statutorily mandated incontestability clauses "are generally construed as statute of limitations that, upon expiration, preclude all coverage defenses, including fraud." Fioretti v. Mass. General Life Ins. Co., 53 F.3d 1228, 1237 (1995) (Eleventh Circuit interpreting N.J.S.A 17B:25-4 in a diversity case).

In interpreting the provisions of an insurance policy, courts should generally apply the plain meaning of the terms and construe ambiguities in favor of the insured and with an insured's objectively reasonable expectations. Id. at 199. "When terms in an insurance policy are included by statutory mandate, however, courts no longer construe the policy against the insurer; rather, the ordinary rules of statutory construction apply." Id.

However, there is no question that "the insured should 'disclose all facts relating to his general health in the application when such information is requested. It is he and he alone who has the necessary complete knowledge of the facts . . . .'" Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 640 (1995). Thus, "even after the expiration of the contestability period, an insurer may deny a claim if the insured committed fraud in the policy application." Id. at 635. Rescission does not require actual intent to deceive, rather "even an innocent misrepresentation can constitute equitable fraud justifying rescission." Id.; Mass. Mutual v. Manzo, 122 N.J. at 114.

Equitable fraud analysis distinguishes between objective and subjective questions on an application for insurance. Ledley, 138 N.J. at 635; Mass. Mutual v. Manzo, 122 N.J. at 114 (the distinction alleviates unfairness of permitting an insurer to rescind because of unintentional misrepresentations).

> Objective questions call for information within the applicant's knowledge, 'such as whether the applicant has been examined or treated by a physician. In contrast, subjective questions 'seek to prove the applicant's state of mind.' They are concerned with more ambiguous issues, such as 'what is the state of the applicant's health or whether the applicant has or has had a specified disease or illness.' Courts have been more lenient when reviewing an applicant's misrepresentation made in response to a subjective question than to an objective question. The rationale behind the distinction between objective and subjective questions is that the answer to a subjective question will not constitute equitable fraud if the question is directed toward probing the knowledge of the applicant and determining the state of his mind and . . . the answer is a correct statement of the applicant's knowledge and belief.

Ledley, 138 N.J. at 636 (citations omitted).

Here, there is no question that the applicant did not provide accurate or complete answers to objective questions. As discussed above, the questions asked for clearly objective information such as name, date of birth, social security number, income, occupation, and amount of insurance

in force. In addition, the applicant misrepresented his health history in answer to objective questions asking, for example, whether the applicant smoked and used alcohol, and whether he had a history of various health conditions.[4] The answers to such questions were no doubt within his knowledge.

Rescission is warranted if a misrepresentation or false statement materially affects the acceptance of the risk or hazard by the insurer. Ledley, 139 N.J. at 637-638. A false statement bars "the right of recovery" if it "materially affected *either* the acceptance of the risk *or* the hazard assumed by the insurer." Mass. Mutual, 122 N.J. at 115 (quoting N.J.S.A. 17B:24-3(d)). "A misrepresentation is material if it 'naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" Ledley, 139 N.J. at 638 ; Mass. Mutual, 122 N.J. 115. Further, "[a] misrepresentation about the applicant's state of health is material as a matter of law, and proof of the falsity of the misrepresentation will allow the defrauded party to void the contract." Ledley, 139 N.J. at 641 (quoting 1A John A. Appleman & Jean Appleman, Insurance Law and Practice § 244, 119 (1981)).

Finally, insurance companies are not under a duty to investigate the insured. Rather, "[w]hen the insured materially misrepresents his or her health, the insurer, in the absence of knowledge of conflicting facts, does not have a duty to investigate independently the insured's medical history." Ledley, 138 N.J. at 631. Here, nothing in the application made in the name of

[4] The investigation by Banner revealed a health history that conflicted with that as represented on the application. It is unclear to the Court whether these conditions arose before 2001, when the policy was issued. However even if these conditions arose thereafter, the exclusion of the information pertaining to Tom Mitchell prevented Banner from obtaining health information about Tom Mitchell which may have been important in the insurer's decision of whether or not to issue the policy because the insurer was unable to obtain a true sense of the potential risk at hand.

James Gray gave rise to a duty to investigate Tom Mitchell's health, finances, additional insurance coverage or other risks because there was nothing to suggest that the applicant had a separate identity or that he misstated his health history.

In the case at bar, the Chief Underwriter at Defendant's sister company, William Penn Life Insurance Company, states that had they known that the representations in the application materials were false, Banner would not have issued a policy. (Pl. Mot. for Summ. J, Jenkins Aff. ¶60). The Court finds this assertion reasonable. There is no question here that the information as provided on the application would naturally and reasonably influence the judgment of an underwriter in estimating the degree or character of the risk or fixing the rate of the premium. Here, Banner was unable to appropriately assess the risk of insuring James Gray because he did not provide any information regarding his second identity. As a result, Banner could not get accurate results or a true picture of the potential insured when they ran information bureau, insurance coverage, and motor vehicle reports, as is in their standard course of business. (Tr. 8, 4-12).

In addition, the application did not indicate that the applicant had any health problems, negative health history, or negative family health history. While it is unclear when Tom Mitchell's health problems began, in light of the fact that at the time of Banner's investigation some of the conditions were chronic, Mitchell/Gray was presumably aware of at least some of the conditions at the time of the application. In any event, whether or not some of the conditions were clearly evident at the time of the application could not be investigated because the Tom Mitchell identity was not disclosed. Also, there is no dispute that the application stated that the insured did not smoke or use alcohol. The applicant's response to those objective questions

would reasonably and naturally influence the underwriter with regard to estimating the degree or character of the risk and in fixing the premium. Finally, the use and existence of an undisclosed separate identity calls the required medical examination into question. Presently, there is no way to know who presented himself for the required medical exam and whether it was in fact the person purporting to be James Gray/Tom Mitchell. Thus, the misrepresentations made on the Banner application were material. Indeed, during oral argument the Defendant conceded that the misrepresentations made on the application were material.[5]

In the disability insurance context, the Supreme Court of New Jersey wrote as follows: "We believe that insurers should compensate victims to the extent 'that compensation will not condone and encourage intentionally wrongful conduct.' Thus, we doubt that the Legislature intended the incontestability clause to serve as an invitation for fraudulent applications for disability insurance." Paul Revere Life Ins. Co. v. Haas, 137 N.J. 190, 209 (1994). In dicta the Supreme Court of New Jersey stated that with regard to life insurance, "we have recognized that insurers ordinarily rely on the 'truthfulness of the insured's rendition of his medical history . . . we have also noted the duty of the insured to disclose known facts about his or her health when the application requests that information." Id. at 210.

Therefore, the Court finds that the multitude of misrepresentations and omissions on the application were material and constitute in the very least equitable fraud warranting rescission of the life insurance policy issued in the name of James Gray.[6]

[5] "The Court: But really your whole defense to their claim of these misrepresentations, it seems to me the way you are arguing this, that you don't disagree that the omissions and misrepresentations that were made were material. Mr. Becker: That's correct. The Court: And/or that were in fact made. Mr Becker: Right." (Tr. 32, 8-15).

[6] Plaintiff repeatedly argues that rescission of the policy is inappropriate because pursuant to N.J. Stat. Ann. §17B:25-6, Defendant is only permitted to adjust the amount of benefits based on the misstatement of age. (Def. Mot. for Summ. J., 7). The statute cited by Plaintiff, however, is directed toward misstatements of age or gender in applications. While the application here did misstate the insured's age, that was only one aspect of a series of

**2. New Jersey Insurance Fraud Prevention Act**

Defendant additionally argues that James Gray/Tom Mitchell and Plaintiff violated the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J. Stat. Ann. § 17:33A-2, et. seq., entitling Banner to compensatory and treble damages. Specifically, Defendant argues that Plaintiff violated the following sections: § 17:33A-4(a)(1)[7], § 17:33A-4(a)(2)[8], § 17:33A-4(a)(3)[9], § 17:33A-4(a)(4)(b)[10], § 17:33A-4(a)(5)[11], and § 17:33A-4 (b)[12]. The applicable burden of proof is a preponderance of the evidence. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 166 (2006).

All of the aforementioned sections of the NJIFPA require that a person "knowingly" engage in prohibited conduct. Defendant argues that the term "knowing" only requires "mere proof that a defendant provided objectively false information." (Def. Mot. for Summ. J., 32)

material omissions and misrepresentations. Thus, N.J.S.A. 17B25-6 does not apply to the instant case.

[7] A person violates this Act if he "[p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." N.J.S.A 17:33A-4(a)(1).

[8] A person violates this Act if he "[p]repares or makes any written or oral statement that is intended to be presented to any insurance company . . .or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." N.J.S.A 17:33A-4(a)(2).

[9] A person violates this Act if he "[c]onceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled." N.J.S.A 17:33A-4(a)(3).

[10] A person violates this Act if he "[p]repares or makes any written or oral statement, intended to be presented to any insurance company . . . for the purpose of obtaining . . . an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract." N.J.S.A 17:33A-4(a)(4)(b).

[11] A person violates this act if he "[c]onceals or knowingly fails to disclose any evidence, written or oral, which may be relevant to a finding that a violation of the provisions of paragraph (4) of this subsection a has or has not occurred." N.J.S.A 17:33A-4(a)(5).

[12] "A person or practitioner violates this act if he knowingly assists, conspires with, or urges any person or practitioner to violate any of the provisions of this act." N.J.S.A 17:33A-4(b).

(quoting Merling v. Horizon, Civ. No. 04-4026, 2009 WL 2382319 (D.N.J. 2009). Indeed, in State v. Nasir, the New Jersey Superior Court interpreted the knowledge requirement as follows: "Because defendant provided a false answer to an objective question, his state of mind as to how to interpret the question is not material and is not relevant in determining its falsity. It is irrelevant whether defendant had the intent to deceive. The answer to the question was indisputably within his knowledge." 355 N.J. Super. 96, 107 (2002); see Merling v. Horizon, Civ. No. 04-4026, 2009 WL 2382319 (D.N.J. 2009) (finding no genuine issue of material fact because "[t]he proofs were so one-sided that the State had to prevail as a matter of law").

With regard to James Gray/Tom Mitchell, Defendant's only argument is that the Banner policy should be rescinded. (Def.'s Mot. for Summ. J., 34). The Court need not reach this issue as it pertains to James Gray/Tom Mitchell because as discussed above, the Court has already found the policy void.

Defendant additionally argues that Plaintiff, Steven Mitchell, committed numerous violations of the NJIFPA in procuring the policy and also in attempting to collect the policy proceeds.

The Court finds that summary judgment is inappropriate for claims pertaining to the procurement of the policy because genuine issues of material fact exist as to what role, if any, Steven Mitchell played in obtaining the policy or in submitting the change of beneficiary forms.

Regarding Defendant's NJIFPA claims against Steven Mitchell pertaining to his attempt to obtain the proceeds, Defendant specifically alleges that Steven Mitchell violated the NJIFPA by the following acts: (1) providing information to Banner regarding his relationship to James Gray in the "Notice of Death," which information, Defendant claims conflicts with information

contained in the Death Certificate; (2) providing a "Proof of Death Claimant's Statement" and a subsequent handwritten statement in connection with Banner's investigation; (3) misrepresenting his date of birth and admitting that he used different names and aliases including "Steven Gray" with a different date of birth and social security number; (4) admitting that the death certificate contained false and inaccurate information;[13] (5) misrepresenting whether his birth certificate contained his parents' names; and (6) not informing Banner of the prior proceedings involving the Valley Forge and All American insurance companies. (Def's Mot. for Summ. J., 34-36).

As to the handwritten statement in connection with Banner's investigation and admissions regarding inaccuracies in the death certificate, material issues of fact remain. Based on the record before it, this Court cannot make a determination as to whether the information provided by Steven Mitchell was in response to objective or subjective questions. Further, under the particular circumstances of this case, answers to theoretically objective questions continue to pose questions of material fact. For example, even if the information provided by Steven Mitchell was in response to theoretically objective questions regarding (1) his relationship to the deceased, (2) information about the deceased, including the information provided in the "Proof of Death Claimant's Statement," and (3) alleged misrepresentations about his own name, date of birth, and social security number.[14] Questions of fact remain as to which of Plaintiff's representations were true, or reasonably believed by Steven Mitchell to be true, at the various points during his claim for benefits and Banner's investigation. The resolution of the factual

[13] Notably, Defendant Banner's brief in support of summary judgment does not clarify when or under what circumstances Plaintiff allegedly admitted that the Death Certificate contained false and inaccurate information. (Def's Mot. for Summ. J., 35, 39).

[14] As to Steven Mitchell's misrepresentations about whether his birth certificate contained his parents' names, during oral argument counsel for Plaintiff argued that Plaintiff simply mis-remembered the contents of his birth certificate and did not intend to deceive. (Tr. 42-43). Even if that was not the case, that act alone is insufficient to justify a finding that there is no issue of material fact that Steven Mitchell violated the NJIFPA.

issues hinge ultimately on a credibility determination that precludes summary judgment at this juncture.[15]

**IV. CONCLUSION**

Therefore, for the aforementioned reasons, the Court finds that the policy issued in the name of James Gray is invalid and grants summary judgment in favor of Defendant as to that issue. The Court denies summary judgment as to Defendant's New Jersey Insurance Fraud Prevention Act claim.

An appropriate Order accompanies this Opinion.

DATED: November 22, 2011

/s/ Jose L. Linares
Jose L. Linares
United States District Judge

[15] In Plaintiff's opposition papers, Plaintiff does not address these accusations other than to state that "Defendant has not shown that any violation of this act was engaged in by the plaintiff," and that "Defendant now seeks to invoke the penalties of the cited legislation because the plaintiff sought to collect what is due him pursuant to the policy of insurance issued to the decedent." (Pl. Opp'n. to Def's Mot. for Summ. J, 18-19).